IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TREGEOUS RENARD SIMS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3192-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent to proceed before the undersigned, Doc. 17, the Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc. 18, is **DENIED**, and the Commissioner's decision is **REVERSED** and the case is **REMANDED**.

### I.  BACKGROUND[1]

**A.  Procedural History**

Plaintiff seeks judicial review of a final decision by Defendant denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for DIB and SSI in January 2011, claiming that he became disabled on September 11, 2001. Doc 12-6 at 6-7, 13-19. Plaintiff's application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2-5, 11-13; Doc. 12-4 at 6-8, 24-26, 30-34; Doc. 12-5 at 2-12.

---

[1] The following background comes from the transcript of the administrative proceedings, Doc. 12, which is split among 11 documents, Doc. 12-1 to 12-11.

**B. Factual Background**

At the time of his alleged onset of disability, Plaintiff was 24 years old and he was 33 years old at the time of the administrative hearing. Doc. 12-3 at 44; Doc. 12-6 at 6. He has an eighth-grade education and had previous employment as an oil technician in a lube shop, an assembly line worker, and a laborer. Doc. 12-3 at 44-45. Plaintiff generally suffers from mental health issues, obesity, neck pain, shoulder pain, and back pain. Because the Court concludes the case should be remanded based on the ALJ's errors in assessing Plaintiff's mental abilities, only the medical evidence relevant to those impairment is discussed here.

The record contains evidence of treatment of Plaintiff's mental impairments from 2008 to 2012, first in Spokane, Washington, and later in Dallas at Metrocare. *E.g.*, Doc. 12-8 at 63-102; Doc. 12-9 at 61-102. In August 2008, Dr. Frank Rosekrans performed a consultative psychological exam. Doc. 12-8 at 34-45. Plaintiff was noted to have hallucinations and delusions, such as talking to visitors from the year 3055 who wanted him to build a time machine, and he reported having suicidal thoughts in the past but not currently. Doc. 12-8 at 39, 41. Plaintiff stated that he has to live near a "power plant, car stereo shop, or perhaps next to or above an electronic [sic] store" because he must be near a good source of power to communicate with the visitors from the future. Doc. 12-8 at 40. Plaintiff scored 30 out of 30 on a mini mental status exam and was able to count backward from 100 by 7s, but another test was invalid because Plaintiff was "too psychologically disturbed and distressed" to pay attention to the exam at that time. Doc. 12-8 at 40, 42. Dr. Rosekrans noted that Plaintiff's responses on proverbs indicated a significant weakness with abstract reasoning skills. The doctor also determined that Plaintiff had a severe thought disorder and was severely limited in his ability to exercise judgment and make decisions. Doc. 12-8 at 36, 40. Dr. Rosekrans diagnosed Plaintiff with psychotic disorder not

otherwise specified ("NOS") with the following significant stressors: inadequate social support, lack of appropriate work skills, social isolation, some depressive symptoms, delusions, and hallucinations. Doc. 12-8 at 42. Among other things, Dr. Rosekrans assessed Plaintiff as not employable in his present state and opined that he had an immediate need for psychological services. Doc. 12-8 at 42. Dr. Rosekrans observed that Plaintiff was not malingering or fabricating any of his symptoms. Doc. 12-8 at 42.

In October 2008, Dr. Joyce Everhart conducted a consultative psychological exam. Doc. 12-8 at 2-8. Plaintiff reported that it was hard for him to follow directions or keep up because he has a lot of thoughts in his head and that he was in counseling but out of medication. Doc. 12-8 at 2-3. Dr. Everhart found the interview to be difficult because Plaintiff often had to be redirected, but there was no clear cut evidence that he was malingering. Doc. 12-8 at 4. Dr. Everhart noted that Plaintiff was well groomed and wore appropriate clothes, but observed that he was disorganized, tangential, and circumstantial with a train of thought that did not appear logical and coherent. Doc. 12-8 at 4. She noted him to be delusional but stated that he denied having hallucinations. Doc. 12-8 at 5. Dr. Everhart found Plaintiff oriented to current events with good long-term memory and opined that he was able to engage in normal activities of daily living. Doc. 12-8 at 5.

Plaintiff completed two psychological tests, which Dr. Everhart said did not indicate malingering, suggested he was making a credible effort, and appeared to be the result of his delusional thinking. Doc. 12-8 at 6. Dr. Everhart noted that the results of Plaintiff's vocabulary test revealed disturbances in his thinking. Doc. 12-8 at 7. Based on her exam, Dr. Everhart diagnosed Plaintiff with psychotic disorder NOS. Doc. 12-8 at 7. In summary, Dr. Everhart stated that Plaintiff has the ability to complete one- or two- step tasks of a repetitive nature, some

ability to complete simple multistep tasks, but more likely than not he would have difficulty with persistence and maintaining a 40-hour work week.  Doc. 12-8 at 7-8.

In November 2008, Dr. Jerry Gardner completed a psychiatric review technique ("PRT") form addressing Plaintiff's mental impairments.  Doc. 12-8 at 10-22.  Dr. Gardner found no medically determinable impairment due to insufficient evidence, but did find a substance addiction disorder.  Doc. 12-8 at 10, 18.  Dr. Gardner assessed Plaintiff with mild restriction of activities of daily living, moderate difficulties in social functioning and maintaining concentration, persistence, and pace, and noted that there was insufficient evidence of episodes of decompensation.  Doc. 12-8 at 20.  Dr. Gardner found that Plaintiff's social limits could not be adequately evaluated due to noncompliance with one of Dr. Everhart's exams and noted that Plaintiff had no difficulties with his activities of daily living and his cognition was intact.  Doc. 12-8 at 22.  Dr. Gardner's PRT was affirmed by Dr. Patricia Kraft in February 2009.  Doc. 12-8 at 103.

In October 2009, Dr. Ardashes Mirzatumy, M.D., of Metrocare completed a medical assessment of Plaintiff's ability to do work-related activities.  Doc. 12-8 at 115-17.  In checklist form, Dr. Mirzatumy found that Plaintiff had some loss in his abilities to make simple work-related decisions and perform at a consistent pace without an unreasonable number of breaks.  Doc. 12-8 at 115-16.  Dr. Mirzatumy observed that Plaintiff had substantially lost the ability to (1) apply commonsense understanding to carry out simple one- or two-step instructions; (2) apply commonsense understanding to carry out detailed but uninvolved instructions; (3) demonstrate reliability by maintaining regular attendance and being reasonably punctual; (4) maintain concentration for two hours; (5) maintain attention or stay on task for two hours; (6) ask simple questions or request assistance; (7) behave in an emotionally stable manner; (8) respond

appropriately to changes in a routine work setting; and (9) cope with normal work stress without exacerbating his symptoms. Doc. 12-8 at 115-16.

Dr. Mirzatumy stated that Plaintiff had an extreme loss of the ability to (1) act appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) finish a normal work week without interruption from his symptoms. Doc. 12-8 at 115-16. Dr. Mirzatumy listed Plaintiff's primary diagnosis as schizoaffective disorder and stated that, on average, he thought Plaintiff's impairments would cause him to be absent from work more than four days a month. Doc. 12-8 at 117. Finally, Dr. Mirzatumy noted that Plaintiff has been limited to this extent since he began treatment with Metrocare the prior month. Doc. 12-8 at 117.

In April 2012, Dr. Frank Crumley, M.D., performed a consultative psychological exam. Doc. 12-10 at 138-45. Dr. Crumley observed that Plaintiff was very disruptive, acted bizarrely in the waiting room, and made derogatory statements regarding people as they walked by. Doc. 12-10 at 138. Dr. Crumley noted that Plaintiff was very agitated and disorganized in his behavior, and was rambling, pressured, very disjointed, and loose. Doc. 12-10 at 138. Dr. Crumley observed that Plaintiff was more preoccupied with hallucinations, paranoid thoughts, and bizarre thoughts than with sadness. Doc. 12-10 at 139. On exam, Dr. Crumley found Plaintiff to be calm and cooperative, his thoughts to be very illogical, irrelevant, and somewhat incoherent, and his mood to be very inappropriate and variable. Doc. 12-10 at 139. Plaintiff performed worse on intelligence tests with Dr. Crumley than he did with previous doctors, failing to subtract serial threes and stating that George Washington was president. Doc. 12-10 at 140. Dr. Crumley diagnosed Plaintiff with paranoid schizophrenia. Doc. 12-10 at 140.

Dr. Crumley contemporaneously completed a medical source statement of Plaintiff's ability to do work-related activities.  Doc. 12-10 at 43-45.  He found Plaintiff to have marked limitations in understanding, remembering, and carrying out both simple and complex instructions and responding appropriately to usual work situations and changes in a routine work setting.  Doc. 12-10 at 43-44.  Dr. Crumley assessed Plaintiff with extreme limitations in making judgments on both simple and complex work-related decisions and interacting with the public, supervisors, and coworkers.  Doc. 12-10 at 43-44.

### C. The ALJ's Findings

In March 2013, the ALJ issued a decision unfavorable to Plaintiff.  Doc. 12-3 at 11-13. At step one, he found that Plaintiff had not engaged in substantial gainful activity since July 2008.  Doc. 12-3 at 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: a mental impairment evaluated under listing 12.03 (schizophrenic, paranoid, and other psychotic disorders) and obesity.  Doc. 12-3 at 17.  At step three, noting Dr. Gardner's PRT, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1.  Doc. 12-3 at 20-23. The ALJ rejected or gave limited weight to the opinions of Dr. Rosekrans, Dr. Mirzatumy, and Dr. Crumley, and accepted Dr. Everhart's opinion only insofar as she found that Plaintiff "could handle simple instructions."  Doc. 12-3 at 24-27.

The ALJ further found that Plaintiff retained the RFC to perform work at all exertional levels with the following limitations: he can sit, stand, and/or walk for about six hours in an eight-hour workday; he maintains the ability to learn, understand, remember, and carry out simple one- or two-step instructions and tasks, and, in such a work setting, he can (1) use judgment in making simple work-related decisions; and (2) respond and relate appropriately to

others, such as supervisors and coworkers; but (3) cannot do so with the public and must keep contact with coworkers to a minimum or incidental basis. Doc. 12-3 at 23. The ALJ acknowledged that a state agency consultant had not completed a mental RFC assessment, but found that the RFC was supported by the PRT assessments and the medical evidence of record. Doc. 12-3 at 33. At step four, the ALJ found that Plaintiff had no past relevant work. Doc. 12-3 at 33. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, he can perform the jobs of laundry worker, dish washer, and warehouse worker. Doc. 12-3 at 34.

## II. LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful

activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III. DISCUSSION

#### A. Issues Presented

As reorganized and reworded by the undersigned, Plaintiff has presented the following issues on appeal:

1. Whether the ALJ's mental and physical RFC assessments are supported by substantial evidence.

2. Whether the ALJ failed to apply the correct standard, as set forth in *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), in determining which of Plaintiff's injuries were severe at step two of the sequential analysis.

Because this case can be resolved on the first ground presented, the Court declines to address the additional arguments.

### B. Arguments and Analysis

Plaintiff argues that the ALJ's RFC determination is not based upon substantial evidence because, other than Dr. Everhart's belief that Plaintiff could do one- to two-step repetitive tasks, there is no medical opinion evidence to support the ALJ's findings. Doc. 15-1 at 21. Without supporting medical opinion evidence, Plaintiff reasons, the ALJ impermissibly used his own purported medical expertise to arrive at his RFC assessment. Doc. 15-1 at 21. Specifically, Plaintiff points out that the ALJ did not rely on a state agency medical consultant opinion in formulating Plaintiff's RFC, instead relying almost entirely Dr. Gardner's PRT despite a PRT only being relevant at steps two and three of the sequential analysis, not to the RFC determination. Doc. 15-1 at 24-25. Plaintiff maintains that the RFC requires a more detailed assessment of work-related functions than the PRT. Doc. 15-1 at 24. Finally, Plaintiff notes that using the PRT as a basis for the RFC leaves the ALJ without a medical source statement that describes the type of work Plaintiff can still perform. Doc. 15-1 at 26-27.

Defendant responds that the ALJ is not required to wholesale adopt the opinions of state agency medical consultants or other medical personnel. Rather, it is the ALJ's responsibility to evaluate each opinion and weigh it accordingly in assessing a claimant's RFC. Doc. 18-1 at 14. Defendant notes that the ALJ should not cede this responsibility to medical personnel. Doc. 18-1 at 15. Plaintiff replies that while the ALJ indeed has the responsibility to determine the RFC, he may not rely on his own expertise and must base his decision upon opinions from medical experts. Doc. 19 at 6.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to

do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is able to do despite his physical and mental limitations, and the RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923.

      Here, the ALJ's RFC determination is not based upon substantial evidence. The medical opinion evidence in this case consists of the opinions of Dr. Rosekrans, Dr. Everhart, Dr. Mirzatumy, and Dr. Crumley, and Dr. Gardner's PRT. Doc. 12-8 at 2-8, 10-22, 34-43, 115-17; Doc. 12-10 at 138-45. In his decision, the ALJ rejected or gave little weight to the opinions of Dr. Rosekrans, Dr. Mirzatumy, and Dr. Crumley, reasoning that they were either conclusory or inconsistent with the medical evidence of record due to the lack of a longitudinal treatment relationship with Plaintiff.[2] Doc. 12-3 at 24-27. As to Dr. Everhart, the ALJ accepted only her opinion that Plaintiff could handle simple instructions, rejecting her conclusion that Plaintiff likely would have difficulty completing a typical work week. Doc. 12-3 at 25.

      The ALJ accepted Dr. Gardner's PRT findings. However, the criteria considered in the PRT "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 at *4. Indeed, the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found

---

[2] The ALJ found Dr. Crumley's medical source statement "conclusory" despite the fact that the form checklist he completed was accompanied by a full report based on the doctor's examination of Plaintiff. Doc. 12-3 at 27; Doc. 12-10 at 139-142.

in . . . the Listing of Impairments, and summarized on the PRTF." *Id.* It was thus improper for the ALJ to base an RFC determination almost entirely on Dr. Gardner's PRT which did not itself address Plaintiff's ability to perform work-related functions. *See Taylor v. Colvin*, No. 4:13-CV-0534, 2014 WL 4443434 at *4 (N.D. Tex. 2014) (Cureton, J.) ("The paragraph B criteria limitations that the ALJ finds following the [PRT] is not an RFC assessment."); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (recognizing that the PRTF merely provides a summary of functions that are itemized in the more detailed mental RFC assessment); *Lor v. Colvin*, No. 14-CV-0216, 2015 WL 1588006 at *3 (N.D. Okla. 2015) ("The PRT findings are not expressed in work-related functional limitations and consequently are not appropriate for inclusion in the RFC.").

Thus, the ALJ's RFC assessment can only be based on only one aspect of Dr. Everhart's opinion − her opinion that Plaintiff could handle simple instructions. From that point, the ALJ by and large drew his own medical conclusions about Plaintiff's mental capacity to work and was "playing doctor" by construing Metrocare treatment notes regarding Plaintiff's mental status and making inferences about Plaintiff's ability to work therefrom without any expert input. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)); *see also Johnson v. Astrue*, No. 3:12-CV-4175-BK, 2013 WL 3297594 at *4 (N.D. Tex. 2013) (Toliver, J.) ("Generally, an ALJ should request a medical source statement that describes the types of work a claimant can still perform.") (citing R*ipley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). The absence of such a statement is not reversible error if the ALJ's decision is otherwise supported by substantial evidence. R*ipley*, 67 F.3d at 557. Nevertheless, as can be seen from the above discussion, there is simply not enough medical opinion evidence to support the ALJ's RFC determination in this case. Accordingly, Plaintiff is entitled to

11

summary judgment. *Id.* (mandating reversal if a plaintiff is prejudiced).

Because the Court is remanding based on the ALJ's error in determining Plaintiff's mental RFC, there is no need for the Court to address the *Stone* error, which is moot in light of the Court's ruling. If the need should arise, Plaintiff can address on remand the other concerns he raised about the ALJ's application of *Stone* and physical RFC assessment. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

### IV.  CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 15, is **GRANTED**, *Defendant's Motion for Summary Judgment*, Doc. 18, is **DENIED**, and the Commissioner's decision is **REVERSED** and **REMANDED**.

**SO ORDERED** on September 15, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE